IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


DENNIS A. TALBOT             *
                            *
v.                          *
                            *    Civil Action No. WMN-12-1507
MARYLAND TRANSIT            *
ADMINISTRATION et al.      *
                            *

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Before the Court is a motion to dismiss, or in the alternative, for summary judgment filed by Defendant Maryland Transit Administration (MTA), ECF No. 14, and a motion to dismiss filed by Defendant Concentra Medical Centers (Concentra), ECF No. 16.[1]  The motions are ripe.  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that both motions will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this suit under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.  Plaintiff has polycystic kidney disease and has required kidney dialysis since December 2002.  Beyond the need for dialysis three times a week,

---

[1] A motion to dismiss was also filed by Defendant Federal Motor Carrier Safety Administration (FMCSA), ECF No. 21.  Plaintiff, however, voluntarily dismissed his claims against FMCSA, see ECF Nos. 29 and 31, rendering that motion moot.

however, Plaintiff maintains that his kidney disease has minimal additional impact on his health or daily activities.

On May 26, 2010, Plaintiff applied for a position as a part-time, entry level, bus driver for MTA.  Plaintiff passed the written and oral examination and was referred by MTA to Defendant Concentra for a medical examination to determine if he could satisfy the federal Department of Transportation (DOT) medical standards for a driver of commercial vehicles.  When Plaintiff appeared for his medical examination and the Concentra physician that examined him learned that Plaintiff had Stage 5 Chronic Kidney Disease (Stage 5 CKD), which is also known as "end stage renal disease," the Concentra physician determined that Plaintiff was not able to meet the DOT medical standards. MTA then informed Plaintiff that the pre-employment process would be discontinued.

In his Complaint, Plaintiff asserts that, in refusing to go forward with the pre-employment process, Defendant MTA discriminated against him on the basis of his disability.  The basis for Plaintiff's claim against Concentra is not as clear. In the Complaint, it appeared that his concern was that the Concentra physician would not permit him to provide a blood sample instead of a urine sample.[2]  In his opposition to the

---

[2] Plaintiff explains that, because of his kidney disease, he is unable to produce urine.

motion, however, it appears that Plaintiff is critical of Concentra for not consulting with Plaintiff's nephrologist before making its determination of his fitness.  Plaintiff also challenges the reasonableness of Concentra's reliance on the DOT standards and takes issue with the substance of the DOT standards themselves.

Defendant MTA moves to dismiss or for summary judgment on the ground that, because Plaintiff is unable to meet the federal medical standard for driving a commercial vehicle, he is not a qualified individual capable of bringing a claim of discrimination under the ADA.  Concentra moves to dismiss Plaintiff's claims on the ground that employment discrimination claims under the ADA can only be brought against employers or prospective employers and Plaintiff was never employed by Concentra and never sought employment with Concentra.  Concentra opines that Plaintiff's claim against it is more in the nature of a medical malpractice claim and that the ADA does not provide a remedy for malpractice.

## II. LEGAL STANDARDS

Concentra has moved to dismiss the Complaint pursuant to Rule 12(b)(6).  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."  McBurney v. Cuccinelli, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted).  A Rule 12(b)(6) motion constitutes an assertion by the defendant that,

even if the facts that the plaintiff alleges are true, the
complaint fails, as a matter of law, "to state a claim upon
which relief can be granted." Fed R. Civ. P. 12(b)(6).
Therefore, in considering such a motion, a court must "accept[ ]
as true the well-pled facts in the complaint and view[ ] them in
the light most favorable to the plaintiff." Brockington v.
Boykins, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation
omitted).

Defendant MTA has moved to dismiss or, in the alternative,
for summary judgment. If, on a motion under Rule 12(b)(6),
matters outside the pleadings are presented to and not excluded
by the court, the motion must be treated as for one summary
judgment under Rule 56. Fed. R. Civ. P. 12(d). In this case,
MTA and Plaintiff have both submitted items of extrinsic
evidence with their briefs. As such, this Court will treat
MTA's motion as a motion for summary judgment.

Summary judgment is only appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S.
317, 323-25 (1986). The court must "draw all justifiable
inferences in favor of the nonmoving party, including questions
of credibility and of the weight to be accorded to particular

4

evidence." <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 520 (1991) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Under the ADA, an employer may apply "qualification standards" for a position as long as those standards are "job-related and consistent with business necessity."  42 U.S.C. § 12113(a).  More specific to the case at bar, courts have consistently held that an employment action based upon an employee's or prospective employee's inability to satisfy DOT medical standards does not violate disability discrimination laws.  See <u>Albertson's Inc. v. Kirkingburg</u>, 527 U.S. 555, 573 (1999) (holding that an employer may, consistent with the ADA, apply DOT's physical qualification standards to its employees); <u>Tate v. Farmland Indus.</u>, 268 F.3d 989, 994 (10th Cir. 2001) (holding that "[w]e have little difficulty concluding that Defendant may rely on a reasonable interpretation of DOT's Medical Advisory Criteria, which undoubtedly are job-related and consistent with Defendant's safety and liability concerns, to establish physical requirements for its [Commercial Motor

Vehicle] operators, provided Defendant does so consistently and uniformly"); Campbell v. Federal Express Corp., 918 F. Supp. 912 (D. Md. 1996) (holding it is "undisputable that [the defendant employer] may rely on DOT regulations as a defense to an ADA discrimination claim").

Here, the federal standards relied upon by MTA were the March 14, 2008, Recommendations of a Medical Expert Panel (MEP or Panel) convened to consider "Chronic Kidney Failure and Commercial Motor Vehicle (CMV) Driver Safety." ECF No. 14-8. In that report, the MEP made recommendations regarding individuals in various stages of kidney failure. As to those diagnosed with Stage 5 CKD, "[t]he MEP unanimously agreed that individuals with kidney failure should not be considered as qualified to drive a CMV." Id. at 9. The Panel explained,

> Aside from the logistical issues related to long
> distance driving and maintaining compliance with
> dialysis regimens there are several reasons why the
> MEP recommends the disqualification of all individuals
> with Stage 5 CKD from driving a CMV.
>
> While there is currently no direct evidence
> demonstrating that individuals with stage 5 CKD are at
> increased risk for a motor vehicle crash, indirect
> evidence consistently demonstrates that, on average,
> individuals with renal failure exhibit cognitive
> impairments across several domains that are thought to
> be associated with decreased driving performance.
> Several other studies have demonstrated an association
> between renal failure, dialysis, and disturbed sleep.
> In addition, dialysis has been shown to be associated
> with several conditions that potentially preclude the
> safe operation of a CMV.  Neurological complications
> that are associated with dialysis include dialysis

6

dementia, disequilibrium syndrome, cerebrovascular accidents, hypertensive encephalopathy, Wernicke's encephalopathy, hemorrhagic stroke, intracranial hypertension, and aggravation of pre-existing atherosclerosis.  Hemodialysis patients may also experience muscle atrophy and related weakness and impaired movement that may impede an individual's ability to safely operate a CMV.

In addition to sleep disorders and cognitive changes, and as well the risk of sudden cardiac death associated with left ventricular hypertrophy and cardiovascular disease, dialysis per se causes changes to the heart.  Hypotension, transient myocardial ischemia and the potential for arrhythmias may accompany this procedure.  It will be impossible to control the timing of the dialysis treatment and the activity of driving, and thus, the MEP strongly recommends that patients undergoing dialysis not be certified as physically qualified to operate CMV's for the purposes of interstate commerce.

Id. at 9-10 (supporting medical references omitted).

Although, as a public agency, MTA is not legally required to impose DOT medical standards on its employees, see 49 C.F.R. §390.3(f)(2), it is undisputed that MTA has consistently required all of its bus drivers to satisfy the federal medical standards.  See ECF No. 14-2 at ¶ 3 (affidavit of MTA's Director of the Office of Fair Practices).  It is also undisputed that Plaintiff has Stage 5 CKD.  See ECF No. 14-6 (letter from Plaintiff's treating physician stating that Plaintiff "is a patient under my care due to his End Stage Renal Disease").[3] Because employers are permitted to apply qualification standards

---

[3] In classifying the stages of CKD, the MEP notes that "Stage 5 CKD is also called end-stage renal disease."  ECF No. 14-8 at 3.

for a position as long as those standards are "job-related and consistent with business necessity" and because Plaintiff is unable to meet those standards, Plaintiff is not qualified for employment as a MTA bus driver.  See Clark v. Southeastern Pa. Trans. Auth., Civ. No. 06-4497, 2008 WL 219223 at *8 (E.D. Pa. Jan. 25, 2008) (granting summary judgment for employer based upon employer's adherence to "DOT physical standards in determining whether an individual is qualified to operate a commercial vehicle" and plaintiff's inability to meet those standards); Green v. Pace Suburban Bus, Civ. No. 02-3031, 2004 WL 1574246 at *5 (N.D. Ill. July 12, 2004) (noting that the plaintiff "faces an uphill battle . . . as there is a developed body of precedent in which dismissals of public transportation drivers were upheld against ADA claims in situations where the driver did not qualify for a DOT medical certification").[4]

Plaintiff's arguments against MTA's motion are based either upon a misreading of the MEP Recommendations or a disagreement with the conclusions of the MEP.  As an example of a misreading, Plaintiff represents that on page 4 of the Recommendations, "it states that the FMCSA does not provide guidance to the Medical

---

[4] As the Federal Motor Carrier Safety Administration (FMCSA) noted in its motion, wholly intrastate transit authorities are technically not subject to DOT regulations and recommendations. ECF No. 21-1 at 9.  The defendant public transit companies in both Clark and Green, however, like MTA, elected to follow DOT certification regulations as a matter of corporate policy. Clark, 2008 WL 219223 at *8 and Green, 2004 WL 1574246 at *1.

Examiner on certifying individuals with CKD." ECF No. 25-1 at 1. On the page referenced by Plaintiff, the MEP did note that "at the present time the FMCSA does not have any physical qualifications standards that speak specifically to CKD." ECF No. 14-8 at 5. Earlier in the document, the Panel makes the same observation and posits this lack of guidance as the reason for convening the Panel. See id. at 2 (after noting the absence of physical qualification standards for those with kidney disease, stating "[t]he FMCSA determined that it was necessary to establish whether renal disorders were likely to have a deleterious impact on driver safety" and requested the convening of the Panel to provide those recommendations).

As an example of another misreading of the Recommendations, Plaintiff represents that "[t]he FMSCA also stated <u>there is currently no direct evidence demonstrating that individuals with Stage 5 CKD are at an increased risk for a crash.</u>" ECF No. 25-1 at 7 (emphasis supplied by Plaintiff). While the Panel did note the lack of direct evidence, in the very same sentence, it noted, "indirect evidence consistently demonstrates that, on average, individuals with renal failure exhibit cognitive impairments across several domains that are thought to be associated with decreased driving performance." ECF No. 14-8 at 11.

As the last example of Plaintiff's misreading of the Recommendations that the Court will note, Plaintiff cites part of a sentence, "individuals with Stage CKD <u>who are not</u> receiving dialysis therapy cannot be considered fit for duty," to suggest that, because he is receiving dialysis, he is able to meet DOT medical standards.  ECF No. 25-1 at 7 (citing Recommendations at 9, emphasis supplied by Plaintiff).  The sentence cited by Plaintiff, however, states in full, "[i]ndividuals who require renal replacement therapy[5] (excluding renal transplant) <u>and</u> those with stage 5 CKD who are not receiving renal replacement (dialysis or renal replacement) therapy cannot be considered as fit-for-duty and should be disqualified from operating a CMV." ECF No. 14-8 at 10 (emphasis supplied by Court).

Beyond misreading the MEP Recommendations, Plaintiff simply disagrees with the Panel's conclusions.  Because the Recommendations reach conclusions that Plaintiff maintains are inconsistent with his own experience with Stage 5 CKD, he opines that the Recommendations are "flawed" and contain "inaccuracies which will directly impact qualified commercial drivers."  ECF No. 25-1 at 6.  While Plaintiff may disagree with the conclusions reached by this panel of nephrologists regarding the

---

[5] Dialysis is a form of renal replacement therapy.  <u>See</u> ECF No. 14-8 at 3 (noting that Stage 5 CKD "[i]nvolves severe illness and requires some form of renal replacement therapy (dialysis or renal transplant))".

impact of CKD on an individual's qualifications to drive a commercial motor vehicle, it was certainly reasonable for Concentra and, in turn, MTA, to rely on those recommendations.

In addition, as to any ADA claims against Concentra, Plaintiff does not directly respond to the argument that ADA employment discrimination claims can only be brought against employers or prospective employers.  Plaintiff's Opposition reinforces Concentra's conclusion that Plaintiff's claims against it are more in the nature of malpractice claims. Plaintiff asserts that the Concentra doctor was "negligent" in not putting his evaluation on hold and contacting Plaintiff's treating nephrologist.  ECF No. 25-1 at 3.  See also id. at 5 (arguing that the failure to consult with his nephrologist "shows negligence as a professional physician").  While these assertions might have some relevance to claims against Concentra in another forum, they do not support an ADA claim.  See Satterfield v. Tenn., 295 F.3d 611, (holding that physician and clinic which contracted with state agency to conduct physical examinations were not "covered entities" for purposes of ADA).[6]

---

[6] The court in Satterfield upheld the entry of summary judgment on the plaintiff's ADA claims against the physician and clinic "[e]ven though the [plaintiff's employer] had a policy of relying on the results of physician examinations performed by [the physician and clinic]."  295 F.3d at 618.  Despite that policy, the court concluded "the [former employer] itself actually controlled [the plaintiff's] access to his employment at all times."  Id.

## IV. CONCLUSION

For the above-stated reasons, the Court finds that Plaintiff was denied a position as an MTA bus driver not because of discrimination, but because of his inability to satisfy federal commercial vehicle medical standards.  Accordingly, MTA's and Concentra's motions will be granted.  A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: November 15, 2012.